IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DONTRE JOHNSON,

            Plaintiff,                                OPINION and ORDER

     v.

                                              Case No.  18-cv-767-wmc

DON UHERKA, and JARED GRADY,

            Defendants.

*Pro se* plaintiff Dontre Johnson, a prisoner at Jackson Correctional Institution, is proceeding on claims arising out of a strip search while previously incarcerated at Waupun Correctional Institution ("Waupun").  Specifically, Johnson was granted leave to proceed under 42 U.S.C. § 1983 against defendants Don Uherka and Jared Grady on Fourth and Eighth Amendment claims based on:  (1) Uherka conducting two strip searches on plaintiff, the second of which was alleged unnecessary and intended to humiliate him; and (2) Grady knowing about the second strip search, having the opportunity to stop it, and failing to do so.  Now before the court is defendants' motion for summary judgment.  (Dkt. #47.) Because no reasonable fact-finder could conclude that defendant Uherka violated Johnson's constitutional rights in conducting either search based on the undisputed evidence of record, the court will grant defendants' motion and direct entry of judgment in their favor.

UNDISPUTED FACTS[1]

During the relevant time period, defendants Don Uherka and Jared Grady were both working as Correctional Officers at Waupun, where plaintiff Johnson was incarcerated.  On May 27, 2018, Officer Uherka was working from 2 to 5 p.m. in one of the visiting rooms where Johnson was called for a visit.  When his visit was over, he was strip searched by Uherka and another unidentified correctional officer in accordance with prison policy and procedures.  Johnson does not challenge any aspect of this first strip search.

Afterwards, Johnson was directed to the waiting area with other inmates who had also been strip searched.  While waiting, Johnson had to use the restroom.  After waiting another 20 minutes or so, Johnson claims he tried to get the officers' attention by opening a door leading to the waiting area and calling out to the officers.  When Uherka was told that Johnson was actually opening a staff entrance door and speaking with inmates in the adjoining room, both Officer Grady and he went over to the waiting area.  Uherka then directed Johnson not to open the door, pointing to the sign on the door reading "Do Not Enter."  Johnson responded with a comment along the lines of: "That's cool I'll just write it up then," meaning that he intended to file a grievance against Uherka.  (Johnson Dep. (dkt. #46) 34.)  Uherka then walked away.

Uherka reported this interaction with Johnson to security staff.  Plus, because he had been told that Johnson had opened the staff entrance door, Uherka believed a second

---

[1]  Unless otherwise indicated, the following facts are material and deemed undisputed when viewed in a light most favorable to plaintiff.  The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence as appropriate.

strip search of Johnson was now necessary.  Consistent with policy, defendant Grady was present for that second search.  Before that second search began, Johnson again opened the "Do Not Enter" door, saying that he had to use the restroom.  Uherka responded that Johnson would need to be strip searched again before he could use the bathroom.  Although Johnson states that the two then had an "exchange" in which Johnson complained about the amount of time he had been waiting, to which Uherka's response was "snappy."  (*Id.* at 33.)  However, Johnson does not describe what was actually said to each other.

The parties dispute whether this second strip search was necessary.  Johnson claims that the second strip search was both unnecessary and that Uherka failed to obtain approval from a supervisor before conducting it as required by DAI Policy #306.17.02 (*see* Pl. Ex. 1000 (dkt. #59-3)).  In response, Uherka further attests that Johnson's actions – opening the "Do Not Enter" door and speaking to other inmates outside of the waiting room -- were suspicious.  Therefore, from Uherka's perspective, a second strip search was necessary to confirm that Johnson did not have any contraband from the inmates located on the other side of the door, since possession of contraband presents a safety and security concern.  Uherka also attests that he did not need permission to conduct the second strip search.  (Uherka Decl. (dkt. #50) ¶ 21.)

The parties also dispute the precise details surrounding the second strip search. According to Uherka, Johnson (1) became "very aggravated" that he had to submit to another strip search, (2) walked into the holding cell for the search, and (3) began to take off his clothing.  (Uherka Decl. (dkt. #50) ¶¶ 24-25.)  Uherka directed Johnson to take off one article of clothing at a time, at which point Johnson threw his clothing at Uherka's

feet, widened his stance and said to Uherka, "What do you want now?"  (*Id.* ¶¶ 26, 27.)
Because of Johnson's behavior and body language, Uherka further explains that he directed
Johnson to step back and closed the holding cell door, at which point, Johnson handed his
remaining clothing out to Uherka through the trap in the cell door.  Johnson does not
directly dispute Uherka's version of this interaction, but adds that while he handed Uherka
items of clothing, their hands touched, prompting Uherka to threaten him with a conduct
report, apparently because touching an officer is prohibited.  (Johnson Dep. (dkt. #46)
43).

Regardless, Uherka proceeded to search each article of Johnson's clothing and
directed Johnson to open his mouth.  Because Johnson opened his mouth for a split second,
however, Uherka explains that he did not have enough time to visually inspect his mouth.
Therefore, Uherka directed Johnson to follow his directives with respect to the pacing of
the search.  Apparently, as a result, Johnson claims that Uherka took much longer at each
step in this second strip search than the first search.  Thus, while the first strip search took
about one minute, the second strip search was longer than two minutes, but less than five
minutes.  Johnson also claims that during this time, Uherka required him to lift his testicles
up for longer than the initial strip search, and was laughing while giving him directions.
(Johnson Dep. (dkt. #46) 45-47.)  The parties agree that Grady was also present for this
search, but did not actually see Johnson's naked body, presumably because he did not look
into the holding cell while Uherka conducted the search.   Regardless, finding no
contraband, Uherka concluded the strip search and Johnson got dressed.  Uherka then
opened the cell door, and he escorted Johnson to the inmate restroom.

Uherka also informed Sergeant Linda Schneider of the situation, who asked to speak with Johnson about opening the "Do Not Enter" door.  As a result, Uherka moved Johnson to a holding cell when he was done with the bathroom.  As they were walking, Johnson commented, "Man I was really hoping you were going to walk me back."  (Uherka Decl. (dkt. #50) ¶ 40.)  Uherka attests that he took that comment as threatening, and he told Lieutenant Tom Nelson about the situation and his intent to write Johnson a conduct report.  Uherka then brought the other inmates back to their housing unit, while Johnson remained in the holding cell.  Johnson was later escorted back to his cell hall after Schneider tried to speak with him.[2]

According to Johnson, this second strip search was not documented as required by DOC policy, which defendants dispute since Uherka subsequently charged Johnson in a conduct report with being threatening and disruptive and for disobeying orders during the second search.  Johnson further claims that he was too embarrassed to speak to any Waupun officials about his experience.  About a month after the strip searches, Johnson submitted a request to the PSU but did not reference psychological harm due to the strip search.  A PSU staff member then asked Johnson for more information, to which Johnson did not respond.

Finally, Uherka attests that he did not make any physical contact with Johnson during the second search.  In opposition to defendants' motion, however, Johnson now

---

[2]  Johnson claims that he was unable to speak with Schneider about the second search but tried unsuccessfully to speak with someone from the psychological services unit ("PSU") about it. However, there is no record of him requesting PSU services for the month after the two strip searches.

claims that Uherka hit him on his buttocks, which contradicts his deposition testimony that the *only* physical contact he had with Uherka during the second search was when their hands touched briefly as Johnson handed over his clothing.  (*Id.* at 43.)


OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment.  *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (7th Cir. 2009), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Defendants seek summary judgment on the merits of plaintiff's Fourth and Eighth Amendment claims, as well as on qualified immunity grounds.  As explained below, qualified immunity clearly shields defendants from liability with respect to plaintiff's Fourth Amendment claim.  As for plaintiff's Eighth Amendment claim, defendants are entitled to summary judgment on the merits and, to the extent the decision is a close call, on qualified immunity grounds.


I.      **Fourth Amendment**

Qualified immunity shields officials from civil liability provided their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known at that time. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  A clearly

6

established right is one where "every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). The inquiry is two-fold: "(1) whether the facts, taken in the light most favorable to the plaintiff[ ], show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gonzales v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

Whether a right was "clearly established" is grounded in the notion of fair notice. The Seventh Circuit recently reminded courts that "clearly established law cannot be framed at a 'high level of generality'"; instead, courts must "[f]rame the constitutional right in terms granular enough to provide fair notice" to defendants that their actions violate a clearly established right. *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). More specifically, a right is "clearly established" only if it is found in Supreme Court precedent, controlling circuit authority, or "a consensus of persuasive authority such that a reasonable [party] could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

Defendants correctly point out that in 2018, it was *not* clearly established law in this circuit that prisoners are entitled to the Fourth Amendment's protections in the context of a visual strip search. The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. This includes "the right to be free from unreasonable searches of one's unclothed body." *Stanley v. Henson*, 337 F.3d 961, 963 (7th Cir. 2003) (internal citation omitted). The

constitutionality of a strip search is evaluated by "balancing … the need for the particular search against the invasion of personal rights that the search entails." *Campbell v. Miller*, 499 F.3d 711, 716 (7th Cir. 2007) (agreeing with jury that police had reasonable suspicion for cavity search of marijuana-possessing arrestee) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).  Even prisoners, who have extremely limited Fourth Amendment rights, at least have the right to bodily integrity.  As such, strip searches may be unreasonable if not supported by reasonable suspicion.  *Henry v. Hulett*, 969 F.3d 769, 774 (7th Cir. 2020) ("We hold that the Fourth Amendment protects a right to bodily privacy for convicted prisoners, albeit in a significantly limited way, including during visual inspections."); *Brown v. Polk Cnty.*, 965 F.3d 534 (7th Cir. 2020) (finding that officers needed reasonable suspicion, not probable cause, that a jail detainee concealed contraband inside her body before moving forward with a cavity search).

However, up until 2020, the Seventh Circuit did not explicitly recognize that prisoners maintained a reasonable expectation of privacy in their bodies with respect to *visual* strip searches like that at issue here.  *Henry*, 969 F.3d at 779 ("We therefore join every other circuit to have addressed the question and hold that the Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand.") (citations omitted).  Importantly, for purposes of this suit, the court also acknowledged in *Henry* that one of its prior decisions addressing the applicability of the Fourth Amendment in the context of prison searches, *King v. McCarty*, 781 F.3d 889 (7th Cir. 2015), created a bright-line rule with respect to the viability of a Fourth Amendment

8

claim for prisoners: "[P]risoners retain[ed] an expectation of privacy regarding instrusions *into* their bodies – such as during digital rectal probes and forced catheterizations – but not visual inspections of them." *Id.* at 782 (citing *King,* 781 F.3d at 899-901).  Since that was the state of the law in this circuit until 2020, defendants are entitled to summary judgment on qualified immunity grounds for any strip search claim under the Fourteenth Amendment based on a visual inspection only.

No genuine dispute exists on this record that the strip search at issue constituted a visual inspection.  Indeed, when plaintiff was naked, Uherka was separated from plaintiff by the closed cell door, and the only moment when they came into physical contact was before the strip search itself, when plaintiff handed Uherka his clothing and their hands touched.  Not only was this contact minimal, it was not part of the search.  Moreover, there is no dispute that Uherka chastised plaintiff *against* touching him.  While plaintiff belatedly attempts to introduce facts about an alleged physical contact in response to defendants' motion for summary judgment, that evidence is not admissible.  In particular, plaintiff submitted a declaration attesting that Uherka (1) squeezed his hand, (2) smacked his buttocks, and (3) touched his anus when he bent over.  (*See* Johnson Decl. (dkt. #59.) ¶¶ 30, 32.)  However, those new statements directly contradict plaintiff's testimony during his deposition in this case that the *only* physical contact was Johnson's "hand simply touched his handing him my clothes" (Johnson Dep. (dkt. #46) 39-40)).  As a result, Johnson's contrary statements in his declaration are barred from consideration at summary judgment by the "sham affidavit" rule, which "prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony." *James v.*

*Hale*, 959 F.3d 307, 315-16 (7th Cir. 2020) (citing *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018)).

Accordingly, there is *no* admissible evidence that when Uherka conducted either strip search, he initiated *any* physical contact with plaintiff whatsoever.  Given the state of circuit law in 2018 when these strip searches occurred, therefore, plaintiff's Fourth Amendment rights were not implicated, and defendants are entitled to qualified immunity on that claim.

## II.    Eighth Amendment

Even so, prison officials violate the Eighth Amendment by conducting strip search without penological justification *and* in a manner intended to humiliate and/or harass the prisoner.  *King*, 781 F.3d at 897, *overruled on other grounds by Henry*, 969 F.3d at 783.  Thus, plaintiff's burden of proof on his Eighth Amendment claims is to present evidence of "conduct that could constitute 'harassment unrelated to prison needs.'"  *Courtney v. Devore*, 595 F. App'x 618, 619 (7th Cir. 2014) (quoting *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)).  Here, defendants seek summary judgment both because:  (1) Uherka had a legitimate safety and security related reason to conduct a second strip search; and (2) the search was not carried out in a manner suggesting an intent to humiliate or harass plaintiff.  While plaintiff disputes both arguments, defendants' position is well-taken on this record.

As an initial matter, there is no dispute that Uherka had a legitimate concern that plaintiff might possess contraband after the first strip search, since it is undisputed that: (1) he opened a door clearly labeled "Do Not Open" even after he being directed *not* to do

so; and (2) in doing so, he had an opportunity to interact with other inmates on the other side of the door who had not yet been strip searched.  Plaintiff disagrees, citing Uherka's failure to obtain supervisory approval to conduct the second strip search.  However, even assuming Uherka did not follow the policy in conducting a second search, his failure does not disturb the legitimacy of concerns about plaintiff having a new opportunity to smuggle in contraband, nor establish a *constitutional* violation.  *See Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 380 (7th Cir. 2017) (failing to follow nurse protocols did not establish an Eighth Amendment violation, since "[n]othing in the U.S. Constitution required [defendant] to follow INDOC's policies."); *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) ("An agency's failure to follow its own regulations does not rise to the level of a constitutional violation unless the regulations themselves are compelled by the Constitution.") (citations omitted).  Instead, the sole inquiry is whether the second strip search was related to a legitimate penological interest.  Given that plaintiff opened a door labeled "Do Not Enter" *twice* to gain access to inmates not yet searched -- the second time after he was directed *not* to open the door again -- no reasonable jury could find Uherka's concern that plaintiff may possess contraband was not valid, nor that the second strip search lacked a direct relationship to maintaining institutional safety and security.

As for Uherka's handling of the second search itself, the parties agree that the second search was longer than the approximate one-minute initial strip search, but not significantly so -- even plaintiff agrees it took less than five minutes -- and Uherka has explained why he took longer to conduct the search:  unlike the initial strip search, when Uherka had no reason to suspect that plaintiff possessed contraband, his subsequent

suspicious behavior and confrontational attitude caused Uherka to take more time to conduct the second strip search and ensure that plaintiff complied with his directives. Therefore, there is no basis for a reasonable jury to infer that Uherka extended the search in an effort to harass or humiliate plaintiff based on it being slightly longer than the first alone.

Plaintiff's version of Uherka's conduct during the search itself requires additional discussion, but ultimately does not support a reasonable jury find a constitutional violation. First, the parties agree that defendant Uherka made *no* harassing statements nor statements suggesting an intent to humiliate plaintiff. Second, the search was *not* conducted in the view of any other inmates, and the only other staff member present, defendant Grady, never actually observed plaintiff's nude body. Thus, plaintiff's only evidence of impropriety is Uherka's alleged laughter while directing plaintiff to hold up his testicles. While this lack of professionalism is offensive, without *any* other indicator of inappropriate conduct, it does not rise to the type of harassment suggesting cruel and unusual punishment. *E.g.*, *Rivera v. Schultz*, 556 F. App'x 500 (Mem.), 502 (7th Cir. 2014) (affirming directed verdict for defendants in situation in which plaintiff claimed guards conducting strip search laughed); *Isby v. Duckworth*, 185 F.3d 1020 (Table), at *2 (7th Cir. 1999) (no Eighth Amendment violation when doctor conducting cavity search of inmate laughed while officers were holding him down); *see also Chatman v. Gossett*, No. 15-cv-1228-JBM, 2018 WL 10517620, at *7 (C.D. Ill. Jan. 17, 2018) (citing *Isby* and finding evidence that one guard smiled during a strip search and that another guard was quiet, with no demeaning comments, insufficient to show a strip search was unconstitutional).

12

If anything, Uherka's claimed laughter is also more benign than other circumstances in which courts have denied summary judgment. For example, in *Mays v. Springborn*, 575 F.3d 643 (7th Cir. 2009), the Seventh Circuit concluded that a jury would need to address the constitutionality of certain strip searches where a plaintiff claimed that the guards conducting the search (1) purposefully used dirty gloves, (2) kept the strip search room cold and (3) made demeaning comments towards the plaintiff about his anus. *Id.* at 646, 650. Here, plaintiff does not suggest that: Uherka's laughter prolonged the strip search; he made any inappropriate comments; he subjected plaintiff to uncomfortable or inhumane conditions during the strip search; or any other inmates or staff (beyond Grady) heard Uherka's laughter. In short, there is *no* other evidence permitting a reasonable jury to infer that Uherka's laughter was intended to humiliate or harm plaintiff. On this record, therefore, no reasonable fact-finder could conclude that Uherka's second strip search violated plaintiff's Eighth Amendment rights.

Finally, even if the court were to find that Uherka's alleged laughter alone supported his claims surviving summary judgment, qualified immunity shields both defendants in these circumstances. In particular, plaintiff has not directed the court to any Supreme Court of Seventh Circuit authority suggesting that an officer's laughter during a strip search *by itself* is sufficient to support a reasonable inference of an Eighth Amendment violation. To the contrary, as described above, when the Seventh Circuit has been confronted within similar circumstances in the past, it has so far declined to find an Eighth Amendment violation. Therefore, there is no basis to conclude that in 2018, it was clearly established

13

that an otherwise appropriately conducted, visually strip search violates a prisoner's Eighth Amendment rights based on a single officer's laughter.

Given that there is no evidence that defendant Grady witnessed a constitutional violation, was in a position to stop it and failed to do so, he obviously is entitled to summary judgment as well. *Fillmore v. Page*, 358 F.3d 496, 505-06 (7th Cir. 2004).  In so ruling, the court does not intend to diminish the indignity that Mr. Johnson felt in being subjected to a second strip search, especially if he felt an urgent need to go to the bathroom, but simply holds that this claimed indignity does not rise to a constitutional violation under current law.

## ORDER

IT IS ORDERED that:

1)  Defendants' motion for summary judgment (dkt. #47) is GRANTED.

2)  The clerk of court is directed to enter judgment in defendants' favor and close this case.

Dated this 7th day of July, 2022.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge